In the Matter of the Estate of THOMAS J. COLTON, Deceased.

Surrogate's Court, New York County, January 12, 1940.

*Gifford, Woody, Carter & Hays,* for the Irving Trust Company, as trustee.

*Charles L. Apfel,* for the objectant, Louis M. Colton, individually and as trustee.

*Seligsberg & Lewis,* for the objectant, Mary Elizabeth Weldon, individually and as guardian of Mary Louise Byrne.

*C. Murray Kavanagh,* special guardian for Mary Louise Byrne, an infant, objectant.

DELEHANTY, S.   There is in process of settlement by the court the trustees' account of their transactions in this estate for the period beginning July 10, 1931, and ending October 31, 1938.   In that proceeding objections were filed which were designed to surcharge the trustees, or one of them, with moneys said to have been received by them in excess of their lawful commissions as executors and also to surcharge the trustees with the losses to the estate because of failures of the trustees to object in certain respects to their own accounts as executors.   During the course of the hearings on the trustees' account, it was ruled that the former decree on the executors' accounting was a bar to inquiries otherwise pertinent in the trustees' accounting.   The pending trustees' proceeding was thereupon suspended at the request of objectants so that they might institute a separate proceeding to vacate the decree made in the executors' accounting.

That decree is dated June 13, 1933.   It settled the account of the executors for the period ending January 11, 1933.   Petitioners seek to vacate the prior decree so as to permit an attack by them upon transactions of the executors in allowing certain charges against the estate of the deceased and in purchasing certain assets which passed from the ownership of the executors to the trustees and are now part of the trust assets.   Attack upon the former decree is made upon the ground that information relevant to the computation of commissions payable under that decree was withheld improperly by the corporate executor; and that facts respecting the circumstances surrounding the allowance of the now disputed charges and respecting the actual motives which dictated the purchase of the questioned securities were suppressed, though candor and fairness required disclosure.   One of the persons seeking to reopen the former decree is the granddaughter of deceased who is an income beneficiary of the trust and has certain interests in the principal.   Her infant child is also a petitioner.   The child has interests contingently in income and also in principal.   The infant

was represented in the former proceeding by a special guardian. A third petitioner is the coexecutor whose account as such was settled by the prior decree. He is an income beneficiary under the trust. His wife, contingently interested in income, is also a petitioner. The proof has been completed on the application to reopen the prior decree. It is necessary now to determine what should be done with that application and what steps should be next taken in the trustees' accounting proceeding which has been suspended.

The first basis for attack upon the prior decree is that there were presented on the former accounting as valid charges against the estate of deceased certain bills for services performed by attorneys in the lifetime of deceased. It is now asserted that the bills in the first instance were in fact rendered to the granddaughter of deceased and that they were altered so as to run to the estate of deceased which is not and never was liable therefor. There is no doubt that deceased obligated himself to and that he paid attorneys of his own in connection with his unwilling participation in some (not all) of a series of litigations which grew out of a matrimonial controversy between the granddaughter of deceased and her then husband. There is no doubt that deceased in his lifetime gave to his granddaughter that support in her controvesy with her husband which he thought adequate for the maintenance of her rights and those of her infant child. There is little doubt that if the bills here in controversy, after receipt of them by the granddaughter to whom the services were rendered, had been presented by her to deceased in his lifetime, deceased would have paid them. But the fact is that the bills were not rendered to deceased. They were bills incurred by his granddaughter. Nothing in the record shows that deceased had obligated himself for the payment of them. They were not his debts and his executors knew they were not at the time of the executors' account. The executors were not free to exercise a benevolence which deceased could have exercised had he lived. They were not authorized to pay the bills of deceased's granddaughter merely because of the belief that deceased would have done so had he lived. Their handling of the bills makes it clear beyond reasonable challenge that the executors were perfectly aware that the charges to the granddaughter were not legitimate charges against the estate. The care with which the altered bills were initialed for payment and with which written authority for the payment was procured from the adult beneficiaries and the fact that an indemnity agreement was procured from the adults all confirm what would be the inescapable conclusion even without this proof that the payment of these bills was an unwarranted charge to the estate. The infant beneficiary is entitled to a reopening of the

former decree so that this payment can be challenged. Concededly his special guardian on the former accounting was not advised of the actual facts respecting the original tenor of the bills and the alteration of them before they were paid. One of the moving parties in this proceeding was the actual debtor. She does not seek to reopen the decree in respect of this transaction. The third of the petitioners is the coexecutor who connived at the payment. He may not have relief in respect of it. His wife was misled into her approval of the payment and is entitled to relief.

The second basis for reopening the decree heretofore entered is the alleged impropriety of the purchase by the corporate executor of certain participation certificates in mortgages on premises located on Gold street and on West One Hundred and Forty-fifth street in this city. The court holds that the facts developed in respect of these purchases entitle all the petitioners to a reopening of the prior decree so that they may be heard on the propriety of the purchases. Five exhibits (Colton Exhibit 1, dated September 8, 1930; special guardian's Exhibit 15, dated September 9, 1930; accountant's Exhibit 4, dated September 9, 1930; accountant's Exhibit 5, dated September 10, 1930, and special guardian's Exhibit 41, dated September 12, 1930) give a contemporaneous view of what the corporate trustee and its attorneys were doing in September, 1930, with estate funds. The oral testimony amplifies these exhibits. From the whole proof the whole story is readily deducible. The date when payment had to be made, if a five per cent discount was to be obtained on the estate tax, was at hand when Colton Exhibit 1 of September 8, 1930, was written. This letter incloses a check of $78,000 and asks that it be credited as advance payment on the tax and asks also that leave be given to substitute $50,000 worth of legals. Accountant's Exhibit 4, written on September 9, 1930, shows that by telephone an employee in the State Tax Department was asked to hold the $78,000 check and not deposit it. On the same date, September 9, 1930, special guardian's Exhibit 15 was written by the mortgage guaranty company in which the head of the personal trust department of the corporate executor and a number of the members of the law firm representing the estate were personally interested individually as stockholders. This letter is addressed to the employee of the corporate executor in immediate charge of the business of the estate and it states it is sent at the suggestion of the attorney in immediate charge of the legal affairs of the estate. In it is a statement that the mortgage company was " in receipt of a letter from the Department of Taxation and Finance to the effect that guaranteed mortgage certificates of this company will be accepted for " deposits to secure contingent tax

liabilities. On this date the time for making a deposit to save the five per cent of the tax had passed. On September 10, 1930, accountant's Exhibit 5 was written by the trust officer in charge of the estate affairs. The text of this letter evidences that the trust officer had telephoned to an employee in the Department of Taxation and Finance to have held up still further the deposit of the check for $78,000 which should have been deposited when it was received on September 9, 1930.. This letter shows that the trust officer was aware that the five per cent discount available to the estate was in jeopardy unless this unauthorized negotiation with the State employee was successful. The final letter (special guardian's Exhibit 41) was sent by the same trust officer on September 12, 1930. In this was inclosed the mortgage certificates issued by the guaranty company whose stockholders have been indicated. In it return is asked of the $78,000 check which had been sent in on September 8, 1930, and had been withheld from deposit. From the record now before the court, it is plain that the mortgage guaranty company had just obtained assurance that its certificates would be receivable for deposits or (possibly) had made the tax payment in this estate the occasion for procuring that approval. It is shown that the attorney for the estate and the trust officer in charge of its affairs jeopardized the estate interests and ran the risk of a possible loss to the estate of the five per cent discount on the tax in order to sell to the estate mortgage participations issued by this particular mortgage guaranty company. The record demonstrates that the transactions in respect of these certificates were not designed for the benefit of the estate, but for the private benefit of the persons connected with the estate who had personal interests in the mortgage guaranty company. The record shows that the time limit for the payment which would assure the five per cent discount on the tax had actually expired without payment of the tax while the attorneys who represented both the mortgage guaranty company and the estate were endeavoring to satisfy the State tax authorities (not in the estate interests but in their own) with the form of a proposed indorsement of a repurchase agreement to be placed upon the certificates. The record shows that while this program was under way the estate cash at the instance of the attorneys for the estate and the trust officer in charge of its affairs was kept in the hands of an employee in the State Tax Department who was induced improperly to withhold it from deposit. Since the certificates of other mortgage guaranty companies were concededly in the market and concededly had been accepted without question as deposits to secure contingent taxes, the record will permit no candid mind to doubt that the corporate executor's

representatives and the attorneys for the estate played fast and loose with the interests of the estate to serve their own private purposes. As to these transactions, the failure on the prior account to reveal these facts furnishes sufficient basis to reopen the former decree. In addition, the record shows that there are substantial questions respecting the intrinsic propriety of these purchases wholly apart from the considerations just discussed. These substantial questions are foreclosed unless the former decree is opened. As to all of petitioners, save the coexecutor, the right to have the former decree reopened is clear.

The court will not hold that the coexecutor should not also have a hearing. The court's own observation of him and the general tenor of his testimony and of the record otherwise concerning his participation in estate affairs requires the finding that his executorship was purely nominal, that his participation in any decisions in the estate was wholly inconsequential and that his actual as distinguished from his legal responsibility for estate transactions was insufficient to furnish basis for any estoppel against him. Since the record shows that he did not participate in these purchases with any real understanding of the facts and that he had actually no knowledge of the personal motives that were operating in the making of them, he should not be denied his day in court because of the fact that he acted nominally as executor. Neither can the defense of laches be sustained on the basis of so-called information furnished to petitioners by inclusion of references to these purchases in the statements of estate assets furnished to them. The whole subject-matter ought to be reopened for inquiry by all of the parties whose interests have been adversely affected by the purchases.

The third basis upon which a reopening of the former decree is sought is that in the computation of commissions under the decree, values were assigned to certain mortgage participations and a certain whole mortgage which were in excess of the real values and were known so to be by the corporate executor. Again, the record supports this charge. In respect of certain of the mortgage interests, there is written demonstration that the charge is true. The court finds as a fact that the officials of the corporate executor responsible for the affairs of this estate were fully aware that the actual values were markedly below the face values upon which commissions were claimed and paid. This information was withheld from the interested parties and from the court when the commissions were computed. Basis is made, therefore, for reopening the decree for the purpose of a commissions computation on a proper basis. All petitioners are entitled to this relief — the coexecutor especially

since his concurrence in the request for relief made by the other petitioners means an assent on his part to the revision downward of commissions allowed to him.

The foregoing rulings define the areas within which the respective petitioners are entitled to relief. The facts and the law have been exhaustively treated by counsel in their respective briefs. No comment on the authorities is made here because there is no substantial dispute as to legal principles applicable to assumed states of fact though there is earnest controversy over what the proof shows to be the actual facts. It is the court's view that the issue essentially is only one of fact. No factual support is found for any of the separate defenses of the corporate executor and such defenses, therefore, are held insufficient to bar relief to petitioners.

The petitioners will be granted leave to file objections to the executors' account not later than ten days after entry of the decree herein. The issues arising on such objections will be tried in due course thereafter. If counsel desire to stipulate for the use of the existing record as part of the proof on such trial such course will be approved by the court. It will also, if counsel agree, consolidate the trial of the issues to be formulated on the executors' account when reopened with like or complementary issues raised in respect of the same matters in the trustees' accounting. This trustees' accounting should in any event be brought to completion in due course.

Submit, on notice, decree granting in the particulars stated herein the prayer of petitioners to reopen the decree of June 13, 1933, which settled the account of the executors.